LITTLE ROCK TRACTION & ELECTRIC COMPANY *v.* TRAINER.

Opinion delivered April 21, 1900.

STREET RAILWAYS—TRANSFERS—INSTRUCTIONS.—Where a passenger sued a street car company to recover damages for the rough conduct of a conductor in threatening to put her off a car to which she had transferred, and in taking her to police headquarters, it being a question whether, as she contended, the conductor of the car from which she transferred misled her by representing that it was unnecessary to procure a transfer ticket, or, as defendant contended, she was negligent in entering the second car without having procured a transfer ticket before leaving the first car, it was error for the trial court to refuse instructions presenting the defendant's theory. (Page 109.)

Appeal from Pulaski Circiuit Court, First Division.

ROBERT J. LEA, Judge.

*Rose, Hemingway & Rose,* for appellant.

It was error for the court to give the first instruction asked by plaintiff, and to modify the seventh and ninth asked by defendant. The conductor could not waive the requirement of the company's rule that passengers should obtain transfer tickets. 64 Tex. 144; 92 Pa. St. 21; 11 So. 506, 511; 13 S. W. 19; Booth,

St. Rys. § 237; 93 Mich. 612; 52 Fed. 197; 34 W. Va. 65; 21 Ore. 121; 135 Mass. 407. There is nothing stated contrary to this principle in 65 Ark. 181; 143 U. S. 60; or 68 Miss. 165. As appellee gave another reason in explanation for her not asking for a transfer, she cannot now excuse it on the new ground that the conductor led her to believe it unnecessary. 96 U. S. 258; 45 Ark. 40; 57 Ark. 632. Knowing the rule as to transfers, she would not fail to obtain one, and then obtain damages for incorrect information. 17 Pac. 54, 59; 47 Ark. 74. The evidence did not warrant any damages. Mere words are not actionable. 17 N. Y. 54; 64 Ark. 538.

*J. H. Hamiter* and *T. J. Oliphint*, for appellee:

The actions of the conductor were tantamount to an expulsion, and appellee was entitled to damages for the humiliation suffered by her. 65 Ark. 177; 43 Ark. 535; 43 L. R. A. 707. The damages were not excessive.

BUNN, C. J. This is a suit for damages for injury suffered by plaintiff, by reason of the rough and uncouth conduct of one of the street car conductors of defendant, and manifest indifference to her rights, exhibited by him towards her while a passenger on his car some time in June, 1897. Damages laid at $5,000. Trial by jury, and verdict for $200, and defendant appealed.

The evidence shows that plaintiff boarded one of the street cars of defendant at Fifth and Main streets, intending to go on Main and West Markham to Cross street; and the plaintiff's evidence showed that on boarding the car she asked the conductor if that car went to West Markham, or was for West Markham, and, being answered in the affirmative by him, she paid her fare, but that, on arriving at Markham street and turning the corner, the car was stopped in front of the Metropolitan Hotel, when and where the conductor informed her that his car would go no further, but that an approaching car indicated to her by him would take her on West Markham. It does not appear that anything else was said by the conductor or by the plaintiff, and the latter got off the first car and stood on the street or side walk in front of the Metropolitan Hotel

until that car moved back out of the way, and the second car moved up and took its place, when plaintiff boarded that one; and it proceeded on West Markham until, somewhere between Center and Spring, the conductor came around and demanded his fare of plaintiff, who refused to pay the same, informing him that she had paid her fare on the car from which she had alighted as stated. He informed her that she would have to pay or get off, and after some other words he informed her that he would see that she was put off if she would not pay her fare, and, this being refused, he ran the car back to police headquarters, and called to his assistance a policeman; but nothing was done by the latter, as the chief of police appeared on the scene at this time, and asked the plaintiff what was the matter, and, on being informed by her, he paid the plaintiff's fare to the conductor, and the plaintiff and conductor boarded the car and proceeded on their way without further trouble. The conductor on the first car testified that he had no conversation with plaintiff as to the running of his car, except at the intersection of Main and Markham as detailed by plaintiff. The conductor on the second car denies all rudeness of conduct toward the plaintiff, and that he did anything more than he was required to do in a case where a passenger refused to pay fare or present a transfer ticket. The plaintiff's evidence tends to show that a considerable crowd had gathered at police headquarters, and that she was thus made the object of their gaze and attention, to her great humiliation. Nothing very definite is shown as to the numbers so collected together, and nothing as to their conduct. Plaintiff herself testifies that the conductor on this second car almost disputed her word, but in what connection or in what respect she fails to state. There is much other evidence, but this is all that is necessary to rehearse at this juncture at least.

The court gave on its own motion several general instructions of the usual and merely formal kind, and at the instance of the plaintiff, the following, numbered 1, to-wit: "If you believe from the evidence that it was the rule or custom of the company to require a transfer ticket at the point at which plaintiff made the change, but you should further find that her

entering the car without procuring a transfer ticket was the result of the negligent conduct of the conductor of the first car, and that the plaintiff, as a reasonably prudent person, had a right, under the circumstances, to assume from the conduc and statements of the first conductor that she would be carried on West Markham without such transfer ticket or further payment of fare, then she was entitled to be carried by the second car without further payment of fare."

The defendant asked nine several instructions based on its evidence and in support of this theory of the case, only one of which (the fourth, as to punitive damages) was given by the court. The others were refused, but afterwards the seventh and ninth were modified by the court, and then given as modified. They are as follows, with the modifications expressed in italics, and the other portions embodying what was asked by the defendant, to-wit: "7. The regulation of the defendant company that persons transferred from one car to another can ride upon the second car without paying fare only upon the production of a transfer check from the conductor of the first car is a reasonable, valid and binding regulation; and if the plaintiff knew of it, and transferred from one car to another without asking the conductor for a transfer check, and without his telling her none was necessary, she cannot recover, *unless she was induced to do so by the conduct and statements of the conductor of the first car.*" The testimony of H. G. Fleming, which was substantially uncontradicted, was to the effect that he had been manager of defendant's street car service since 1893, and was well acquainted with its rules and regulations, and that "a conductor is not authorized to pass a passenger from another car without the production of such ticket, except in case of emergency, such as a break down or something of that kind. If a car was running extra from Fifteenth street to Main and Markham, and a passenger on it wished to go out West Markham [such was the case in this instance], the conductor on the latter car has no authority to pass him except on a transfer ticket." "If any person, having paid on one car, wishes to ride on another without paying a second fare, he must ask and get a transfer ticket." He also stated that

these rules and regulations were kept posted in all the cars for a long time, and they were so posted at Ninth and Main up to the time of testifying.    The plaintiff herself testified that she was well acquainted with and knew the rules as to transfers; that she knew that when she went from one car to another she had to pay or have a transfer; that there was a notice in the cars, stating that persons wanting to transfer must ask the conductor for a transfer check.    There was ample evidence to sustain the instruction as asked, and the defendant was entitled to it, without the modification, as presenting its case or its side of the case.    The same may be said of the ninth instruction, which is as follows:  "9.    The court instructs the jury that if, by the custom or regulation of the defendant company, passengers paying on one car could ride on another one by presenting upon the second car a transfer check procured from the first, and the plaintiff failed to procure such transfer check and present it on the car to which she transferred, then she was not entitled to ride on the car to which she transferred, without the payment of fare.    The conductor was not authorized to allow her to ride on his car without the payment of fare or the presentation of such transfer check, *and the company would not be liable unless the jury should find that her entering the car was the result of the conduct of the conductor on the Main street car, and further find that she, as a usually prudent and business person, had a right to suppose from the conduct and statement of the first car conductor that she would be carried on West Markham without such transfer ticket or further payment of fare."*    The modification changes the issue from that made in the complaint and answer, from mistreatment on the part of the conductor on the second car, as charged in the complaint, to a charge against the conductor of the first car to the effect that he had in some way produced or been the cause of the alleged injury to plaintiff on the second car.    There is no evidence to support that theory.    What was said by the conductor of the first car to the plaintiff before his car reached Markham street, according to her testimony, had reference solely to the running of his car, and not transfers.    What he said to her after his car reached Markham was

a simple statement that his car went no further, and that the approaching car would take her on West Markham.   Neither plaintiff nor the first conductor seems to have given any thought to the subject of transfer, or of procuring a transfer ticket.   Which of the two should have taken the initiative in regard to the transfer ticket is a matter of dispute between the plaintiff and defendant, and can only be settled by the evidence and instructions thereon.   The court gave the plaintiff an instruction on her evidence and theory of the case, but refused to give any instruction to the defendant presenting its side of the controversy, and upon its evidence as to that part.

The instructions, as given, were confusing.   The only conduct or statement of the first car conductor made to plaintiff, upon which she claims she had a right to rely in going from one to the other, and to ride thereon without payment of additional fare, was a misstatement merely as to the running of his car. If it is sought to make the statements of the first car conductor serve the place of representations which would justify the plaintiff in refusing to present a transfer ticket or pay fare on the second car, as seems to be the effort in this connection, it cannot be permitted, for the plaintiff ought not to rely on representations of the servant which she knew were in contravention of the rules and regulations of the company on the subject.

To try the issue made by the complaint and answer, the simple inquiry was whether or not plaintiff had a right under the circumstances to refuse to pay her fare or present a transfer ticket to the conductor of the second car.   If she had such a right, that ends the case for her, leaving only an assessment of damages to be had on the evidence in relation thereto.   If she had not such right, then the case is ended against her. That was purely a question of fact.   The court gave plaintiff's instruction on her theory and evidence of the case, and should have given the defendant's instruction on its theory, without the modifications, and, failing to do so, its judgment is reversed, and the cause remanded for a new trial.